UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LIBERTY MUTUAL FIRE INSURANCE COMPANY et al.,**
           **Plaintiffs,**

          **v.**                                              **Case No. 10-C-520**

**LG ELECTRONICS USA, INC.,**
           **Defendant.**

---

**DECISION AND ORDER DENYING DEFENDANT'S MOTION IN LIMINE
AND GRANTING, IN PART, DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

---

## I. PROCEDURAL HISTORY

On June 12, 2007, Susan Borth discovered the dehumidifier in the basement of her home ablaze. (Docket No. 45, ¶1.) This fire led to damage to her home and personal property, and her insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), compensated her for the loss. (Docket No. 45, ¶2.) On May 14, 2010, Liberty Mutual filed suit against the manufacturer of the dehumidifier, LG Electronics USA, Inc. ("LG"), in Waukesha County Circuit Court alleging negligence, strict product liability, and breach of the implied warranty of merchantability. (Docket No. 1.) LG removed the matter to this federal court on June 22, 2012 due to the diversity of the parties, (Docket No. 1), and the matter was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge, (Docket Nos. 6, 19, 20, 21, 22).

Currently before the court is the defendant's motion in limine to limit the testimony of one of the plaintiffs' experts, Paul Hansen ("Hansen"), (Docket No. 40), and the defendant's motion for summary judgment, (Docket No. 43). The plaintiffs responded to these motions, (Docket No. 47), the defendant replied, (Docket No. 54), and with leave of the court, the plaintiffs submitted a sur-

reply, (Docket No. 59). The pleadings on these motions are closed and the matters are ready for resolution.

## II. MOTION IN LIMINE TO LIMIT TESTIMONY OF PAUL HANSEN

Paul Hansen is an electrical engineer retained by the plaintiffs as an expert to offer an opinion as to whether a design defect in the dehumidifier led to the fire. Hansen examined the remains of the unit, compared it to a new unit of the same model, and concluded that the fire started in the dehumidifier as a result of a failure of the insulation in the dehumidifier's wiring, possibly caused by the lack of a grommet at the point where wires enter the control enclosure of the unit. (Docket No. 48-5 at 9.) LG contends that Hansen lacks the training and experience to make this conclusion, and in any event, this opinion is not adequately supported. Therefore, LG seeks to exclude Hansen from offering his opinion at trial.

Expert testimony is governed by Federal Rule of Evidence 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, "Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis — requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony." Lapsley v. Xtek, Inc., 689 F.3d 802, 809 (7th Cir. 2012). Under this Rule, the court plays the role of gatekeeper and "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993); Lapsley, 689 F.3d at 809. "The purpose of the Daubert inquiry is to scrutinize proposed

2

Case 2:10-cv-00520-AEG   Filed 11/13/12   Page 2 of 8   Document 60

expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." Lapsley, 689 F.3d at 805 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)).

The court does not decide whether the witness is credible or the evidence accurate; those are matters that remain reserved for the jury. Id. Rather, the court's inquiry is limited to the question of whether the expert's opinion has cleared the threshold of reliability. This "inquiry is fact-dependent and flexible." Id. at 810. "The non-exclusive list of Daubert reliability factors for scientific evidence includes whether or not the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." Id.

If an expert's conclusion is based upon a disputed fact, the court cannot resolve that factual dispute as part of its analysis of whether the evidence is reliable. Rather, "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

The defendant contends that Hansen's conclusion that a design defect led to the fire is inadequately supported and thus unreliable because, although he based his conclusions upon the standards of Underwriters Laboratory ("UL"), UL inspected this model of dehumidifier and approved its design. (Docket No. 41 at 8-11.) Specifically, UL stated in a report that the wiring within the dehumidifier is "positively routed in such a manner that it is not subject to mechanical damage due to contact with sharp edges, abrasive surfaces, vibrating or moving parts." (Docket No. 41 at 10.) Hansen noted that the absence of a grommet left only the rolled metal edges to protect the wiring as it entered the control enclosure and opined that this may have resulted in damage to the insulation on the wiring. (Docket No. 48-5 at 8.)

Even if the court was to assume that UL's standards are the benchmark of safe design, a UL approval is certainly not dispositive of the issue. It is entirely possible that the UL misapplied its own guidelines in its review of this dehumidifier design. Or a design in conformity with the UL standards may nonetheless be defective. Ultimately, these are clearly issues for the finder of fact akin to the court being presented with dueling experts, one saying a design was safe, the other saying it was defective.

The defendant next contends that Hansen should be excluded from offering testimony as to a design defect because he was barred from offering such testimony in a prior case. (Docket No. 41 at 11-12 (citing Auto-Owners Ins. Co. v. Uniden Am. Corp., 503 F. Supp. 2d 1087 (E.D. Wis. 2007)).) In that prior case, the court concluded that although Hansen could point to various scenarios under which the phone at the center of the case might have caused the fire, he did not point to any design defect that might have led to one of these scenarios. The court permitted Hansen to testify that the phone caused the fire, but concluded he lacked a sufficient basis to go the next step and opine that a design or manufacturing defect led to the phone igniting. Id. at 1096.

The court in that prior case never said that Hansen was unqualified to opine as to the existence of a design defect; it simply concluded that there was a lack of evidence that any design defect led to the fire in the five-year-old phone. But more importantly, even if the court had rejected Hansen's report altogether, it would not be dispositive in this matter. It is not as if some variety of collateral estoppel acts to bar an expert from ever testifying again simply because a judge once found his opinion inadequate. Here, in contrast to Uniden, Hansen points to a specific aspect of the dehumidifier's design that he alleges was defective—the absence of a grommet at the point where the wiring entered the control unit.

Moreover, Hansen's conclusion that the lack of a grommet was defective is not simply his opinion. He relies upon UL's guidelines, which even the defendant seems to concede are industry

4

benchmarks. While the UL report indicates that all wires were "positively routed in such a manner that it is not subject to mechanical damage due to contact with sharp edges, abrasive surfaces, vibrating or moving parts," (Docket No. 41 at 10), a statement that articulates the UL standard, (Docket No. 59 at 3), Hansen says they were not. It is not the court's role at this stage to resolve this factual dispute; rather, this is a question for the finder of fact at trial.

In reply, the defendant states, "Liberty Mutual's response to LG Electronics [sic] motions failed completely to address the primary legal issue raised by LG: that plaintiffs' electrical engineer, Paul Hansen, does not have the requisite scientific foundation, or the knowledge, skill, training, experience, on which to offer an opinion on the design of a dehumidifier." (Docket No. 54 at 1.) The plaintiffs certainly cannot be faulted for having missed the argument. The court, rereading the defendant's brief even aided by the defendant's strenuous assurances that this was the "primary legal issue" had difficulty locating it. The only reference to this argument that the court could identify in the defendant's brief in support of its motion in limine is a single isolated sentence stating, "Further, there is no basis to suggest that Hansen is even qualified to weigh in on design issues." (Docket No. 41 at 12.) This conclusory contention is hardly the sort of discussion one would expect for a party's "primary legal issue."

In any event, the court rejects this argument. While Hansen is an electrical engineer by training, he has ample and adequate experience related to relevant matters of industrial design. (See Docket No. 57-3.) Although there is no indication that Hansen possesses the training or experience to opine on all matters of product design, the issue here is specifically related to product design vis-à-vis electrical systems, and thus within Hansen's training and experience.

Hansen has worked as a forensic electrical engineer since 1984. (Docket No. 48-4 at 3.) He is professional engineer, registered in both Wisconsin and Illinois. (Docket No. 55-1.) He is a member of the International Association of Arson Investigators, the National Fire Protection

5

Association, the National Society of Professional Engineers, the International Association of Electrical Inspectors, and the Wisconsin Arson Insurance Council. (Docket No. 55-1.) He has attended and taught various seminars related to arson, electrical fires, and fire generally, and he has participated in numerous cases as an expert. (Docket No. 55-1); see, e.g., CIC Partners v. Sunbeam Prods., 2012 U.S. Dist. LEXIS 5047 (D. Minn. Jan. 17, 2012); Mich. Millers Mut. Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc., 2007 U.S. Dist. LEXIS 5615 (E.D. Wis. Jan. 25, 2007); Westfield Ins. Co. v. J.C. Penney Corp., 466 F. Supp. 2d 1086 (W.D. Wis. 2006); Mich. Millers Mut. Ins. Co. v. Hamilton Beach / Proctor Silex, Inc., 2006 U.S. Dist. LEXIS 18634 (E.D. Wis. Apr. 6, 2006); Allstate Ins. Co. v. Electrolux Home Prods., 2005 U.S. Dist. LEXIS 47897 (E.D. Wis. Oct. 31, 2005). Thus, the court concludes that Hansen possesses the requisite knowledge, skill, experience, training, or education to testify as an expert in this matter.

As for Hansen's methodology, the defendant characterizes the method by which Hansen arrived at his conclusion as having "essentially threw up his hands," (Docket No. 41 at 2). Hansen's method can be more accurately described as process of elimination, which is an accepted scientific technique. Uniden, 503 F. Supp. 2d at 1093 (citing cases). Moreover, Hansen indicated that his investigation followed National Fire Protection Association ("NFPA") 921, which is well-established as a standard in fire investigations and is generally accepted within the field. See, e.g., Electrolux, 2005 U.S. Dist. LEXIS 47897, *5 (describing NFPA 921 as "the industry guide for fire inspections"); Abu-Hashish v. Scottsdale Ins. Co., 88 F. Supp. 2d 906, 908 (N.D. Ill. 2000) (describing NFPA 921 as "a recognized guide for use by fire investigators in the fire investigation process").

The court concludes that Hansen's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue. Based upon the report and deposition excerpts presented, Hansen's testimony is based upon sufficient facts or data, is the

6

Case 2:10-cv-00520-AEG   Filed 11/13/12   Page 6 of 8   Document 60

product of reliable principles and methods, and Hansen has reliably applied these principles and methods to the facts of the case. Accordingly, the court concludes that Hansen's testimony is admissible under Fed. R. Evid. 701 and Daubert, and therefore the defendant's motion in limine, (Docket No. 40), shall be denied.

### III. MOTION FOR SUMMARY JUDGMENT

The court's denial of the defendant's motion in limine to limit the testimony of Hansen moots much the defendant's motion for summary judgment. Hansen's opinion that the absence of a grommet was a design defect and this led to the fire is sufficient to create a dispute of material fact as to the claims presented in the complaint. However, one question remains to be resolved. The defendant contends that "[a]s a matter of law, in Wisconsin, a breach of implied warranty claim cannot be pursued alongside the first two causes of action [in the plaintiff's complaint] and must be dismissed." (Docket No. 44 at 1.) The plaintiffs do not address this argument in their response or sur-reply.

The complaint alleges three causes of action against the defendant: (1) negligence; (2) strict product liability; and (3) breach of the implied warranty of merchantability. (Docket No. 1.) This case comes before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, and thus this court is required to apply state substantive law. Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999). Both sides cite Wisconsin substantive law and thus in the absence of any dispute, this court applies Wisconsin law. Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, 136 F.3d 1116, 1120 (7th Cir. 1998) (quoting Wood v. Mid-Valley, Inc., 942 F.2d 425, 426-27 (7th Cir. 1991)) ("the operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits…. Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); see also Grundstad v. Ritt, 166 F.3d 867, 870 (7th Cir. 1999) (same).

In Austin v. Ford Motor Co., 86 Wis. 2d 628, 273 N.W.2d 233 (1979), the Wisconsin Supreme Court stated "it is inappropriate to bring an action for breach of warranty where a tort remedy is sought.…[W]here the action is one in tort, the only appropriate action is that of strict liability in tort …." Id. at 644-45, 273 N.W.2d at 240. This court has not been presented with any argument as to why the rationale of Austin should not apply to this case.

In the absence of any objection to the defendant's motion for summary judgment on this point, the motion shall be granted in part. Accordingly, the plaintiffs' claim for breach of the implied warranty of merchantability shall be dismissed.

**IT IS THEREFORE ORDERED** that the defendant's motion in limine, (Docket No. 40), is denied.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket No. 43), is granted with respect to the plaintiff's claim for breach of the implied warranty of merchantability, and accordingly count three of the complaint is hereby dismissed. The defendant's motion for summary judgment is denied as to all other grounds.

**IT IS FURTHER ORDERED** that the court shall conduct a telephonic scheduling conference on Friday, November 30, 2012 at 9:00 A.M. to discuss scheduling this matter for trial. The parties shall advise the court as to which attorneys will participate, together with their direct telephone numbers, and the court shall initiate the call.

Dated at Milwaukee, Wisconsin this 13th day of November, 2012.

AARON E. GOODSTEIN
U.S. Magistrate Judge